ANGIE D. BURGESS,               )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-13-055-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## OPINION AND ORDER

Plaintiff Angie D. Burgess (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act.  Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled.  For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on February 23, 1974 and was 37 years old at the time of the ALJ's decision. Claimant obtained a GED and also underwent training as a certified nurse's assistant ("CNA"). Claimant has worked in the past as a CNA at a nursing home. Claimant alleges an inability to work beginning December 20, 2003 due to limitations resulting from post-traumatic stress disorder ("PTSD"), bipolar disorder, anxiety, depression, panic attacks, and

borderline personality disorder.

## Procedural History

On December 18, 2009, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 5, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") David Engel in Tulsa, Oklahoma. By decision dated September 2, 2011, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on December 12, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper determination at steps four and five; (2) failing to properly evaluate the medical and non-medical source evidence;

and (3) performing an improper credibility analysis.

## Steps Four and Five Analysis

In his decision, the ALJ found Claimant suffered from the severe impairments of status post cervical spine surgery, migraine headaches, depression, anxiety, bipolar disorder, and marijuana use. (Tr. 24). The ALJ determined Claimant retained the RFC to perform light work. However, he also restricted Claimant stating she could not climb ropes, ladders, and scaffolds and was unable to work in environments where she would be exposed to unprotected heights and dangerous moving machinery parts. She was able to understand, remember, and carry out simple instructions in a work-related setting, and was able to interact with co-workers and supervisors, under routine supervision, but was unable to interact with the general public more than occasionally, regardless of whether that interaction was in person or over a telephone. Claimant was found to be afflicted with symptoms from a variety of sources to include moderate chronic intermittent pain and fatigue, and allied disorders, all variously described, that were of sufficient severity so as to be noticeable to her at all times, but nevertheless was able to remain attentive and responsive in a work setting and would be able to perform work assignments within the cited limitations. (Tr. 27-28).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of housekeeper, bench assembler, clerical mailer, and semi-conductor assembler, all of which the expert testified existed in sufficient numbers nationally and regionally. (Tr. 39). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 39-40).

Claimant contends the ALJ failed to pose appropriate hypothetical questions to the vocational expert. Specifically, the ALJ set out a hypothetical claimant who was "limited to light work or sedentary in terms of exertional work . . . no medium, no heavy exertional work." (Tr. 71). Claimant asserts the ALJ erred in utilizing these terms of art in the hypothetical questioning without first establishing that the vocational expert understood precisely the extent of the functional limitations entailed by those terms. The exertional terms are widely used, especially by vocational experts. Indeed, the testimony which is sought from the expert is couched in terms of these exertional levels. This Court attributes no error to the employment of these terms in the hypothetical questioning. *See e.g.* <u>Kerstetter v. Colvin</u>, 2014 WL 4656492, 10 (N.D. Okla.)("It is preferable for the ALJ to articulate the parameters of the claimant's ability to walk, stand, and sit. However, the terms sedentary and light work are terms of art that are well defined in the regulations and in the Dictionary of

Occupational Titles (DOT), published by the Department of Labor. See 20 C.F.R. §§ 404.1567, 416.967. Since those terms have such widely understood meanings, the ALJ's hypothetical question which employed those terms was acceptably specific.")

Claimant also contends the ALJ should have included limitations in the RFC determination which accommodated her migraine headaches. The ALJ discussed Claimant's migraine headaches and the treatment she obtained for the condition. (Tr. 34). He accounted for the condition in the pain component of the RFC and in the hypothetical questioning of the vocational expert. (Tr. 27, 71). No further restriction was required.

Claimant next asserts the ALJ should have included further limitations in the RFC and hypothetical questioning of the vocational expert for her suicidal ideations and other mental impairments. The ALJ thoroughly discussed Claimant's mental conditions and treatment. (Tr. 32-33). The medical record indicates Claimant's medication was adjusted and "[s]he made fairly rapid stabilization. . . ." (Tr. 375). Claimant reported doing better and no longer had suicidal or homicidal thoughts. Claimant's depression was decreased and she was feeling better and sleeping well. Id. No further functional limitations from this condition is apparent from the record. The ALJ's RFC accommodated this impairment.

## Consideration of Source Evidence

Claimant contends the ALJ relied upon inaccurate information in the record and failed to set forth the basis for the weight attributed to the opinion evidence from the non-examining consultants. On April 19, 2010, Dr. Burnard Pierce completed a Psychiatric Review Technique form and Mental RFC Assessment form on Claimant. He concluded Claimant experienced moderate difficulties in maintaining social functioning. (Tr. 295). He also found moderate limitations in the ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (Tr. 299-300). The opinions were affirmed by Dr. Dorothy Millican-Wynn on August 4, 2010. (Tr. 303). This Court has no reason to believe Dr. Pierce did not review the records as he indicated.

The ALJ attributed "significant weight" to the consultants' opinions finding them to be the only opinions of an acceptable medical source. (Tr. 37). He also noted that none of Claimant's treating physicians have indicated an opinion that would reflect a listing-level or disabling condition. Id. The ALJ set forth the weight he was attributing to the consultants' opinion and the basis for doing so. This fulfills his obligation under the regulations and the case authority. 20 C.F.R. § 404.1527(f)(2)(ii). Thus,

Claimant's argument fails.

Claimant next contends the ALJ failed to properly consider the function report of Claimant's sister-in-law completed January 18, 2010. The ALJ considered the report in his decision. (Tr. 35). He noted Claimant's activities which were supported by the function report and that Claimant's sister-in-law reported that Claimant engaged in more activities than Claimant reported herself. Id. Claimant takes issue with this characterization of the two reports. However, Claimant's sister-in-law reported Claimant drove sometimes, was able to go out alone and shop. (Tr. 35, 185). Claimant reported that she could not go to the grocery store or most places alone and did not drive. (Tr. 34, 148). Claimant also reported she was isolated while her sister-in-law state she hung out with Claimant about four times a week and Claimant cared for her children. (Tr. 35, 182-83). Claimant has failed to identify the error in the ALJ's assessment of the two reports. No error is attributed to this evaluation by the ALJ.

### Credibility Determination

Claimant challenges the ALJ's credibility determination. The ALJ found Claimant cleaned her house and cared for her children. (Tr. 35). He also noted the various inconsistencies in Claimant's testimony as compared with the objective record. (Tr. 27, 29, 34,

36, 37).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's

credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. <u>Kepler</u>, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ fulfilled his obligation to evaluate Claimant's testimony in light of the record. The multitude of inconsistencies warranted the ALJ's reduced consideration of Claimant's credibility.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2014.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE